UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH J. PERRY #529416,

    Plaintiff,

v.

MICHAEL BROWN, et al.,

    Defendants.
_____/

Case No. 2:24-cv-00085

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant Jamros's motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies or, alternatively, to timely file his cause of action. (ECF No. 18.) Plaintiff did not respond.[1]

State prisoner Joseph J. Perry filed a complaint under 42 U.S.C. § 1983 alleging that the two named Defendants – Kinross Correctional Facility Warden Brown and Nurse Practitioner (NP) Jamros – violated his Eighth Amendment rights by refusing to schedule him for surgery after he fractured his left-hand playing sports

---

[1] The Court granted Perry's motion for an extension of time to respond giving him until October 15, 2024, to file his response. Perry then filed a motion dated October 14, 2024, asking for the Court to stay his response for a period of discovery. The Court denied that motion because Perry failed to explain why he needed discovery to respond to Defendant's motion. (ECF No. 26.)

on March 14, 2020. (ECF No. 1.) Warden Brown has been dismissed from this case; thus, only Defendant NP Jamros remains in the case. (ECF Nos. 9 and 10.)

Perry was immediately taken to the hospital after he fractured a bone in his hand. He says that a physician told him that he needed two screws placed in the bone to ensure proper healing. (ECF No. 1, PageID.5.) Perry says that when he returned to the prison, "medical staff" told him his injury would heal and there was no need for surgery. (*Id.*) Perry says that surgery was required, and that he eventually had surgery on October 1, 2023. (*Id.*) Perry claims that the delay caused by "defendants' wrongful conduct" violated his Eighth Amendment rights by leaving him "permanently with only a limited use of his left hand." (*Id.*)

Nurse Practitioner Jamros argues that Perry failed to properly exhaust his administrative remedies. A review of the applicable grievance records shows that there exists no genuine issue of material fact regarding exhaustion, thus entitling NP Jamros to summary judgment. It is respectfully recommended that Court grant NP Jamros's motion for summary judgment and dismiss her from this case.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549

---

[2]     The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024).  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

3

U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*.  When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in

5

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally

7

> defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

### IV. Analysis

Perry says that he exhausted his administrative remedies by submitting two grievances through each step of the grievance process. In his response to Defendant's motion for summary judgment, Perry provided the following table:



(ECF No. 19, PageID.64.)

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

Perry has not provided copies of these grievances.[4] The Step I grievances that he submitted with his complaint have different identifying numbers.

Perry attached two different copies of Step I grievances to his complaint. Perry attached a copy of his Step I grievance in <u>KCF 20-04-332-12z</u>, which is shown below:

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**                                          CSJ-247A
>
> Date Received at Step I: 4/3/2020    Grievance Identifier: KCF 2004 332 12Z
>
> Name (print first, last): Joseph J. Perry
> Number: 529416
> Institution: KCF
> Lock Number: E-1-63
> Date of Incident: 3/26/2020
> Today's Date: 3/30/2020
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 3/26/2020 If none, explain why. Per PD-03.02.130 "Within Five Business days after attempting to resolve a grievable issue with staff, a grievant may send a complete Prisoner/Parolee Grievance (CSJ-247A) to the Step I Grievance Coordinator..." I consulted with PA Wendy Jambrose on 3/23/2020, and sent a follow-up kite on 3/26/2020, and received no response.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. I am being denied medical treatment, as a result, my bone is healing incorrectly, which will naturally result in me not being able to have proper use of my wrist, limiting the activities I would normally be able to do, I am suffering continuously, unnecessary pain from my broken wrist, which effects my sleep, I am only getting about (3) hours a sleep before I am awaken from the pain.
> On 3/14/2020, I broke my wrist, I was immediately taken to the hospital, the doctor there said that he was scheduling me for surgery within 72 hours to put two screws in so that the broken bone can heal properly, he also gave me (9) narco pain killers to hold me over until the surgery, when I returned to the facility my medication was taken from me and replaced another pain killer. On 3/17/2020, I kited health care about my appointment for surgery because I hadn't gone yet, on 3/23/2020, I was seen by PA Wendy Jambrose, who told me that I would not be going for the surgery, that the bone can "heal how it heals", she also informed me that she was takeing me off of my pain medication despit my protest, I sent another kite on 3/26/2020 in my efforts to resolve the issue, but received no response.
> Wendy Jambrose has violated my Eighth Amendment U.S. Constitutional rights, and the Department Policy "Humane Treatment and Living Conditions For Prisoners" PD-03.03.130, as well as the "Health Services" Policy PD-03.04.100. According to the United States Supreme Court I am still a human being and retain human rights, and because I cannot provide health care for myself, that the MDOC has to do so., and as of now, I have been denied medical treatment, and placed at risk of being a handicap.   Joseph Perry
>                                                                                                    Grievant's Signature

(ECF No. 1, PageID.12.)

---

[4] In addition to not providing copies of any grievance documents to support his claim that he submitted grievances through Step III of the process, Perry's grievance table indicates that his Step III appeals for the two grievances identified were rejected. Assuming that is true, as stated above, a grievance is not properly exhausted if it is rejected by the MDOC for failure to follow grievance procedures. However, the record shows that Perry never submitted a Step III appeal.

9

Perry's complaint documents indicate that this grievance was denied at Step I. (*Id.*, PageID.15-17.)

Perry also attached a copy of his Step I grievance in KCF 20-05-467-28e to his complaint:

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**        4835-4247 10/94   28-E
>
> Date Received at Step I: 5/6/2020   Grievance Identifier: KCF20051467028E
>
> Name: Joseph Perry   Number: 529416   Institution: K.CF   Lock Number: E-1-63   Date of Incident: 05-03-2020   Today's Date: 05-03-2020
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 04-09-2020
>
> On 3/14/2020, I broke my wrist. I was immediately taken to the hospital. The doctor there said that he was scheduling me to see the Cardiology and that I was going to have to put screws in my wrist to help it grow back normal. He also gave me a narco pain killer to hold me over till surgery and when I returned to the facility my medication was taken from me and place with another pain pill call Ultram. In 03/23/2020 I was seen by PA Wendy Jambrose, who told me that I would not be going for surgery, that the bone can heal how it heals. I was also taken off the pain pills. It being 7 weeks and my hand or wrist have not got any better my hands are swollen like I have fluid in my hands. What I'm really sayin is I am a human being and have rights without the right treatment I can become handicap for the rest of my life.
>
> Joseph Perry, Grievant's Signature
>
> RESPONSE: Grievance Rejected. See attached.

(*Id.*, PageID.18.)

As shown above, the Step I form provided by Perry indicated that the grievance was rejected. Perry did not include the attachment that might have indicated the

10

reason for the rejection. Furthermore, he did not indicate that he appealed either of these grievances through each step of the grievance process.

NP Jamros says that Perry failed to properly exhaust administrative grievance remedies by appealing each of his grievances through Step III of the grievance process. Jamros submitted Perry's MDOC Prisoner Step III Grievance Report, which shows that he had not filed a Step III grievance as of July 9, 2024:

**MDOC Prisoner Step III Grievance Report**
1/1/2018 to Present

Prisoner #: 529416   Last Name: Perry   First Name: Joseph

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ☐ | ☐ | ☐ | ☐ | ☐ | |

Notes:

A search of this database has been performed for the time period Listed on the title of this report, and no records were found.

Richard D. Russell
Manager, Grievance Section
Office of Legal Affairs
Michigan Department of Corrections

July 9, 2024                                                                                     Page 1 of 1

(ECF No. 18-1, PageID.54.)

In the opinion of the undersigned, NP Jamros has shown that there exists no genuine issue of material fact on the issue of exhaustion of administrative remedies.

11

The record shows that Perry did not properly exhaust his administrative remedies through Step III of the grievance process.[5]

## V. Recommendation

The undersigned respectfully recommends that this Court grant NP Jamros's motion for summary judgment and dismiss her without prejudice due to Perry's failure to properly exhaust his administrative remedies.

If the Court accepts this recommendation, this case will be dismissed.

Dated:   October 28, 2024                           /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[5] Alternatively, NP Jamros argues that even if Perry exhausted his grievance remedies through grievances KCF 20-04-32-12z and KCF 20-05-467-28e, his claim would be barred by the applicable three-year statute of limitations period. (ECF No. 18, PageID.50-52.)  In the June 21, 2024 opinion, the Court acknowledged that: "Plaintiff asserts that the violation of his rights was of a continuing nature which lasted until he finally received surgery on October 1, 2023." (ECF No. 9, PageID.9.) In the opinion of the undersigned, because Defendant has not fully addressed the "continuing nature" of Plaintiff's claim in her motion for summary judgment, it is recommended that Court conclude that she failed to meet her burden of establishing that no genuine issue of material fact exists on her statute of limitations argument.